Hillary P. Carls
CARLS LAW PLLC
322 W. Mendenhall
P.O. Box 85
Bozeman, MT 59771
406.577.2145
hillary@carlslaw.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| Elizabeth Klemann,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>Zachary Joseph Jackson Ailes, and<br>John Doe Defendants 1-50,<br><br>　　　　Defendants. | Case No.: CV 23-150-M- KLD<br><br>**Plaintiff's Response Brief in<br>Opposition to Defendant's<br>Rule 12(b)(6) Motion to Dismiss,<br>in Part, First Amended Complaint** |

Plaintiff, Elizabeth Klemann, by and through her attorney of record Hillary

P. Carls of Carls Law, PLLC, files her response brief in opposition to Defendant's

Rule 12(b)(6) Motion to Dismiss, in Part, First Amended Complaint (Doc. 15) and

Defendant's Rule 12(b)(6) Brief in Support of Motion to Dismiss, in Part, First

Amended Complaint (Doc. 16).

## Introduction

This case is about a few short weeks in July 2019, when the Defendant,

Zachary Ailes, forever changed Ms. Klemann's life with his negligent, thoughtless,

and dangerous choices. (Doc. 6 ¶ 7).  This case is about how a reasonable person would act in these circumstances, and our duties to each other. This case is about how Mr. Ailes did not act like a reasonable person and violated his duty of care to Ms. Klemann.

## Legal Standard

The Ninth Circuit has explained:

> Rule 12(b)(6) motions are viewed with disfavor. Dismissal without leave to amend is proper only in "extraordinary" cases. *When ruling on a 12(b)(6) motion, the complaint must be construed in the light most favorable to the plaintiff.* The court must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them.

*Broam v. Bogan,* 320 F.3d 1023, 1028 (9th Cir. 2003) (citations omitted) (emphasis added).

Factual disputes regarding "when the statute of limitations accrued [can] be reserved for trial following further factual development." *Hutton v. Nyhart*, 2019 WL 1255018, *5 (D. Mont. 2019).

> Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it "is not generally amenable to resolution on a Rule 12(b)(6) motion." A motion to dismiss based on the running of the statute of limitations period may be granted only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim. For this reason, we have reversed dismissals where the applicability of the equitable tolling

2

doctrine depended upon factual questions not clearly resolved in the pleadings.

*Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995).

Further, the Montana Supreme Court has explained "where two statutes apply, the district court should apply the statute with the longer period of limitation." *Semenza v. Bowman*, 268 Mont. 118, 123, 885 P.2d 451, 454 (Mont. 1994).

The Ninth Circuit explains that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting case).

> [L]eave to amend should be freely granted "when justice so requires." Although Rule 15(a) gives the trial court discretion over this matter, we have repeatedly stressed that the court must remain guided by "the underlying purpose of Rule 15 … to facilitate decision on the merits, rather than on the pleadings or technicalities."

*Id.* at 1127 (citations omitted).

### Factual Background

In July 2019, Mr. Ailes was 19-years-old and visiting Montana. (Doc. 6 ¶¶ 4-5). Ms. Klemann was also 19-years-old and a Montana native. (Doc. 6 ¶¶ 4, 6). When Mr. Ailes first met Ms. Klemann, he violated Ms. Klemann's boundaries, attempting to kiss her despite Ms. Klemann stating: No. (Doc. 6 ¶ 16). On July 12, 2019, while attempting to pass a semi-truck on highway U.S. 2 with Ms. Klemann

as his passenger, Mr. Ailes negligently crashed his truck head-on into another vehicle. (Doc. 6 ¶¶ 8-10). As a result of the July 12, 2019 crash, Ms. Klemann was injured, including but not limited to, brain damage. Mr. Ailes knew of and observed Ms. Klemann's brain damage. (Doc. 6 ¶¶ 18-20). During this period, Mr. Ailes continued his negligent behavior with Ms. Klemann, with dangerous and drunk driving, seeking unwanted sexual contact, and playing with firearms. (Doc. 6 ¶ 17).

Mr. Ailes's behavior continued on July 29, 2019 by ignoring Ms. Klemann's impaired behavior appearing intoxicated, being unable to walk straight or without assistance, speaking loudly, and behaving strangely. (Doc. 6 ¶¶ 21-23). A reasonable person would have recognized Ms. Klemann's impairment and took actions to reasonably keep Ms. Klemann safe, which could have included, among other actions:

1.      Taking Ms. Klemann home;

2.      Calling a ride (Uber, taxi, etc.) to take Ms. Klemann home;

3.      Renting a separate hotel room for Ms. Klemann; or

4.      Putting Ms. Klemann safely to sleep.

Mr. Ailes did not take any of these actions. (Doc. 6 ¶¶ 24-26). Rather, without Ms. Klemann's consent, Mr. Ailes:

\\\   \\\   \\\

4

1. Took Ms. Klemann to his hotel room;

2. Took off his shirt;

3. Took off Ms. Klemann's pants;

4. Took off Ms. Klemann's underwear; and

5. Had sex with Ms. Klemann.

(Doc. 6 ¶¶ 24-27).

Mr. Ailes and Ms. Klemann previously had consensual sexual contact. Given this prior history and known impaired state of Ms. Klemann, Mr. Ailes reasonably had the duty and responsibility to keep Ms. Klemann safe, including but not limited to, receiving her consent. Ms. Klemann placed her trust in Mr. Ailes, and he violated her trust. Ultimately, Mr. Ailes breached his duties of care with Ms. Klemann with his negligent action and inaction. Mr. Ailes's behavior in July 2019 persistently violated his duties to Ms. Klemann. (Doc. 6 ¶ 32).

**Procedural Background**

On July 7, 2022, Ms. Klemann filed her original complaint against Mr. Ailes in the Montana Eleventh Judicial District Court, Flathead County. (Doc. 6 at 1). Per § 27-2-204(1), MCA, Ms. Klemann timely filed her complaint within 3-years of the alleged acts. Montana Rule of Civil Procedure 4(t) provided Ms. Klemann with 3-years to serve Mr. Ailes.

Pursuant to Montana Rule of Civil Procedure 4(d)(3)(A), Ms. Klemann served Mr. Ailes via mail on August 9, 2022 with the original complaint, which he received on August 11, 2022. The same day, Mr. Ailes's attorney contacted Ms. Klemann's attorney.

Ms. Klemann filed her First Amended Complaint & Jury Trial Demand ("FAC") on September 14, 2023. (Doc. 6). Mr. Ailes's attorney accepted service on November 17, 2023. (Doc. 1-2). Pursuant to Montana Rule of Civil Procedure 15(c), the FAC relates back to the original filing date of July 7, 2022. "M. R. Civ. P. 15(c) allows a court to render a dispositive decision on the merits of a party's argument, rather than on technicalities." *H & H Development, LLC v. Ramlow*, 2012 MT 51, ¶ 17, 364 Mont. 283, 272 P.3d 657.

Ms. Klemann complied with the applicable procedural requirements and has not escalated this matter. Mr. Ailes escalated his experience with Ms. Klemann when he caused a serious car crash. Mr. Ailes further escalated his experience with Ms. Klemann when he did not keep her safe and he failed to receive her consent. Mr. Ailes's actions escalated this matter, not Ms. Klemann.

**Argument**

Mr. Ailes's attempts to reframe this matter simply seek the strategic advantage of dismissal. However, his arguments lack merit. Ms. Klemann's claims are grounded in negligence because of the facts in this matter.

Montana's pattern jury instructions provide: "Negligence is the failure to use reasonable care. Negligence may consist of action or inaction. A person is negligent if he/she fails to act as an ordinarily prudent person would act under the circumstances." *See* MPI2d 2.00, Negligence – Defined. Here, the trial will focus on whether, in July 2019, Mr. Ailes "use[d] reasonable care" and "act[ed] as an ordinarily prudent person would act under the circumstances."

Mr. Ailes seeks to change Ms. Klemann's allegations and elevate her burden due to the potential strategic benefit of dismissal. Upon review of the facts, Mr. Ailes's attempts to avoid responsibility for his actions and inaction fail.

1. *In July 2019, Mr. Ailes breached his duty of care to Ms. Klemann, and is liable for the damages resulting from his negligence.*

The gravamen of Ms. Klemann's claims is negligence, not an intentional tort. Contrary to his arguments, it is Mr. Ailes who mislabels Ms. Klemann's claims. At a minimum, however, the drastically different perspectives of Mr. Ailes and Ms. Klemann related to the pending motion evidence the significant factual disputes in this matter, which only a jury can resolve.

Federal Rule of Civil Procedure 12(b)(6) motions require the Court to construe Ms. Klemann's allegations "in the light most favorable" to her, and that "any reasonable inferences[] be drawn" from her allegations. Ms. Klemann's allegations relate to Mr. Ailes's failure to keep her safe, including but not limited to, failing to receive her consent. Mr. Ailes's breach of duty and negligence

occurred long before the moment upon which he focuses and describes as a battery. Unsurprisingly, Mr. Ailes ignores most of his actions and inaction, which include multiple negligent failures culminating in the resulting injuries to Ms. Klemann. As discussed above, Mr. Ailes had many opportunities to act as a reasonable person would, but he failed to do so.  Consequently, Mr. Ailes is negligent.

> The fundamental distinction between negligence and an intentional tort is whether the defendant intended the specific injury, not whether the defendant intended the act, while a negligent actor does not desire to bring about the consequences which follow, nor does he or she know that they are substantially certain to occur, or believe that they will; there is merely a risk of such consequences, sufficiently great to lead a reasonable person in his or her position to anticipate them, and to guard against them. … An act committed intentionally may give rise to an action in negligence if one or more harmful consequences of the act are unintended, but if there is substantial certainty that an injury will result from an act or there is a deliberate act to cause the injury, that act is an intentional act, not a negligent act.

57A Am. Jur. 2d Negligence § 29 (Jan. 2024 Update).

Mr. Ailes seeks to define his actions as the intentional tort of battery.  Mr. Ailes makes this battery argument because it may be time-barred, not because the facts support an allegation of intentional conduct.  However, Mr. Ailes's argument ignores the factual reality that given his relationship, history, and knowledge about Ms. Klemann, Mr. Ailes's duties of care to her were not limited to the criminal offense of battery.

At trial, Mr. Ailes could conceivably argue that any violation was limited to

the intentional tort of battery. If the jury agreed, then post-trial the allegations related to battery could be dismissed as time-barred. However, only the jury can resolve the factual dispute regarding the nature of Mr. Ailes's actions and inaction.

Mr. Ailes's focus on the terms "sexual contact" ignore the actual allegations, and the omissions of the terms: assault or battery. For context, the following terms and frequency of reference in the FAC reflect the focus of negligence and consent, not contact:

- Negligence, and variations – referenced 25 times. (Doc. 6 ¶¶ 3, 7, 36, 41, 45-57, 59, 60).

- Consent, and variations – referenced 13 times. (Doc. 6 ¶¶ 17, 27, 28, 30-36, 38, 40, 47, 48).

- Sexual Contact – referenced 9 times. (Doc. 6 ¶¶ 17, 33-36, 38, 40, 47, 48).

Accepting Mr. Ailes's arguments requires ignoring the majority of Ms. Klemann's allegations, contrary to the requirement that facts be construed in favor of Ms. Klemann. Despite Mr. Ailes's manipulation of the words and labels in this matter, Ms. Klemann's case seeks a jury trial to resolve whether Mr. Ailes's breached his duty of care and was negligent. Mr. Ailes's arguments fail.

Mr. Ailes' reliance on *State Farm Fire & Cas. Co. v. van Goder*, 235 Neb. 355, 455 N.W.2d 543 is misplaced. This case analyzed insurance coverage exclusions related to a minister's sexual abuse of a minor, for which he was

convicted. *See* 235 Neb. at 356, 358, 455 N.W.2d at 544-45. The court reviewed

cases involving sexual abuse of children and incest—cases that do not contemplate

consent. *See id*., 235 Neb. at 358-360, 545-546; *see, i.e*., § 45-5-501(1)(b)(iv),

MCA (prohibiting consent for victims under 16 years old); § 45-5-507, MCA

(limited defense of consent in incest charges).

By contrast here, the parties are the same age, previously had sexual contact,

and voluntarily spent time together create factual issues that only a jury can resolve

related to Mr. Ailes's reasonable care to Ms. Klemann. Negligence is the

appropriate standard to examine Mr. Ailes's actions and intent. *State Farm*

analyzed neither the factual nor legal issues presented in this case.

The *State Farm* court relied on *Newman v. Christensen*, 149 Neb. 471, 31

N.W.2d 417 (Neb. 1948), which supports Ms. Klemann claims. The *Newman* court

explained:

> The intention to do harm is of the essence of an assault[.] An assault
> and battery is not negligence. The former is intentional; the latter is
> unintentional. 'Bishop, in his work on Criminal Law, (volume 2, §
> 72,) says that to constitute a battery 'there must be some sort of evil in
> the intent.' We are therefore prepared to say that to constitute an
> assault and battery under the foregoing definitions the act complained
> of must be done with a hostile intent.

149 Neb. at 474, 31 N.W.2d at 418-419 (citations omitted). "Assault and battery

consists in an injury actually done to the person of another in any angry,

revengeful, or insolent manner." 149 Neb. at 474, 31 N.W.2d at 419 (quoting

case). "It is a general rule that, when one does an act which proves injurious to another, civil liability usually follows from the existence of a right in the injured person. Although the act was done without malice, and no mischief was intended, he may be held answerable for the injuries which follow." 149 Neb. at 474, 31 N.W.2d at 419-420. Applicable here, the court concluded that the statute of limitations for the unintentional tort applied, not the intentional act. *See id*. Notably, the trial resolved this factual dispute. 149 Neb. at 472, 31 N.W.2d at 418.

Ms. Klemann does not allege that Mr. Ailes intended to harm her, nor does she anticipate proving a level of intent or culpability that rises to "angry, revengeful, or insolent manner." As alleged, Mr. Ailes acted negligently. Consequently, the 3-year statute of limitations applies to this matter.

*Walden v. Maryland Casualty Company*, 2017 WL 6015675 (D. Mont. Dec. 4, 2017) also does not support Mr. Ailes's argument. In *Walden*, the Court "scoured Plaintiffs' amended complaint filed in the underlying case and there are no claims of negligence alleged in that pleading .…" *Id.* at *6. In *Walden*, the plaintiffs did not allege negligence. Here, Ms. Klemann's claims only allege negligence.  The Court could scour the allegations and would find no reference to assault or battery. (Doc. 6 ¶¶ 7, 36, 41, 45-52, 53-57, 59-60).

Similarly, the other cases relied upon by Mr. Ailes do not apply because Ms. Klemann has not alleged "negligent assault and battery" nor is this litigation an

insurance coverage dispute. *See, i.e., United National Insurance Co. v. The Tunnel, Inc.*, 988 F.2d 351, (2nd Cir. 1993) (addressing an insurance coverage exclusion, and the plaintiff's attempts to circumvent the exclusion with allegations of negligent assault or battery); *Weston v. Cole*, 233 Mont. 61, 63, 758 P.2d 289, 290 (Mont. 1988) ("Weston's complaint however, could not be more clear. It states that Cole unlawfully 'assaulted and battered' Weston. The complaint asserts Cole committed an assault and battery, and no additional or alternative claims are presented.").

Mr. Ailes relies on *Borrerro v. Haks Group, Inc.*, by only providing select language. The *Borrerro* court fully explained: "Negligence is distinguished from assault and battery by the absence of that intent which is a necessary ingredient of the latter." *Borrerro*, 165 A.D.3d 1216, 1217, 87 N.Y.S.3d 618, 621 (N.Y. Sup., App. Div. 2d. 2018) (citations omitted). "Although 'the same act may constitute battery or negligence depending on whether or not it was intentional, ... there cannot be recovery for both.'" 165 A.D.3d at 1218, 87 N.Y.S.3d at 622. As alleged, Mr. Ailes's unintentional actions make negligence appropriate.

Ms. Klemann's allegations are based in negligence because those are the facts that she will prove at trial. Viewing the allegations in Ms. Klemann's favor, Ms. Klemann has alleged, and will prove, Mr. Ailes's negligent actions that lead up to and caused the July 29, 2019 events. Additionally, because Ms. Klemann's

claims of negligence survive, she is also able to pursue her claims of emotional distress and punitive damages.

Importantly, even if Ms. Klemann's claims were potentially subject to the intentional tort statute of limitations of 2-years or the negligence statute of limitations of 3-years, Montana law instructs that "where two statutes apply, the district court should apply the statute with the longer period of limitation." *Semenza*, 268 Mont. at 123, 885 P.2d at 454.

Mr. Klemann's claims are timely, and Mr. Ailes's motion should be denied.

2. <u>Allegations of negligence *per se* do not trigger criminal concepts in this civil litigation.</u>

Montana's pattern jury instruction provides: "If you find that [any party to this suit] [the defendant] violated any of the following laws, then [that party] [the defendant] is negligent. You should then determine whether that negligence was a cause of the plaintiff's injury. [Quote or paraphrase the statute]." MPI2d 2.15, Negligence – Violation of Law. Effectively, Montana law provides that violating a statute is proof to establish negligence. Statutory violations are evidence of negligence.

However, a negligence *per se* claim does not transform the negligence claims to an intentional tort, or change the applicable statute of limitations. The law does not law support Mr. Ailes's argument attempting to apply criminal standards to this civil litigation. Mr. Ailes's arguments fail and his motion should

be denied.

3. <u>Alternatively, equity dictates that the statute of limitations be tolled and this matter decided on the merits.</u>

If Ms. Klemann's allegations are not timely, equitable tolling directs that the statute of limitations be tolled under these circumstances. Mr. Ailes does not dispute that Ms. Klemann's allegations related to the car accident are timely. This litigation will proceed, and Mr. Ailes will not benefit from a case dismissed in total. Evidence and discovery will occur regarding the events of July 2019.

"[T]he goal of statutes of limitation is to protect defendants whose ability to effectively prepare a defense has been lessened due to the passage of time." *Lozeau v. Geico Indem. Co.*, 2009 MT 136, ¶ 20, 350 Mont. 320, 207 P.3d 316; *Board of Regents of University of State of N.Y v. Tomanio*, 446 U.S. 478, 487 (1980) (recognizing that statutes of limitations serve to not "impair the accuracy of the fact-finding process…."); *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1136 (9th Cir. 2001) ("As Justice Holmes had stated, statutes of limitation served to prevent 'surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'"). The Ninth Circuit encourages "the liberal application of tolling rules 'or their functional equivalents' to cases in which a plaintiff had duly notified the defendant." *Daviton*, 241 F.3d at 1136.

\\\   \\\   \\\

The Ninth Circuit examined equity jurisprudence, explaining: "[E]quity exists in 'every rational system of jurisprudence' to address the cases in 'which the antecedent rules cannot be applied without injustice, or to which they cannot be applied at all.'" *Smith v. Davis*, 953 F.3d 582, 590 (9th Cir. 2020) (quoting case) (also quoting The Federalist No. 83 (Alexander Hamilton): "[T]he great and primary use of a court of equity is to give relief in extraordinary cases, which are exceptions to general rules."). "[E]quity requires a court to deal with the case before it, complete with its unique circumstances and characteristics, courts must take a flexible approach in applying equitable principles." *Id*.

"Equitable tolling allows in limited circumstances for an action to be pursued despite the failure to comply with relevant statutory filing deadlines." *Lozeau*, 2009 MT ¶ 14. The United States Supreme Court "has been clear that one such rule that limits a court's equitable powers is that 'a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Smith*, 953 F.3d at 590. The Montana Supreme Court explains that:

> the statute of limitations may be tolled when a party reasonably and in good faith pursues one of several possible legal remedies and the claimant meets three criteria: (1) timely notice to the defendant within the applicable statute of limitations in filing the first claim; (2) lack of prejudice to [the] defendant in gathering evidence to defend against

the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim.

*Lozeau,* 2009 MT ¶ 14.

While serving on the Montana Supreme Court, then Justice Morris aptly observed that equity rejects:

> "any one-size-fits-all approach" when addressing a limitations period. Equity allows courts to evaluate the circumstances and reasons for why a party failed to comply with a limitations period. This equitable power proves particularly critical when a limitations period would deprive a party of his rights and where, simultaneously, enforcing the limitations period would serve no policy purpose. Equity ensures just results in exceptional circumstances.

*BNSF Ry. Co. v. Cringle*, 2012 MT 143, ¶ 25, 365 Mont. 304, 281 P.3d 203 (J. Morris concurring) (citing case).

Ms. Klemann satisfies all elements, both under Federal and State law, meriting application of equitable tolling of the statute of limitations. The extraordinary circumstances here is the understandably complex nature of being a victim, identifying options, and courageously disclosing traumatic experiences. Compounding these complexities, Ms. Klemann also has been recovering from brain damage caused by Mr. Ailes.

Here, Mr. Ailes learned about Ms. Klemann's allegations in a timely manner, and Ms. Klemann simply continued to define and specify her allegations in the FAC. Mr. Ailes will not be prejudiced because he possesses all evidence related to these claims, and this litigation will proceed, with the parties exchanging

discovery regarding July 2019, regardless of the disposition of the subject motion. Further, Mr. Ailes's actions effectively created a continuing tort, where his lack of due care consumed July 2019 that caused ongoing injury to Ms. Klemann. *See, e.g., Knight v. Wells Fargo Bank*, 2016 WL 3221593, *5 (D. Mont. June 8, 2016) (explaining the continuing tort theory "may be applied to injuries that are ongoing or in some way recurring"). Further, Ms. Klemann in good faith notified Mr. Ailes and took reasonable actions related to her allegations.

Montana law and policy favors that the "longer period of limitation" be applied. *See, i.e., Semenza*, 268 Mont. at 123, 885 P.2d at 454. Here, good cause exists to toll the statute of limitations and allow this matter to be decided on the merits.

4. <u>Alternatively, the Court should grant leave to amend.</u>

Alternatively, if Ms. Klemann's allegations require more specific statements regarding when her claims accrued, or to focus negligent acts, she moves for leave to amend the FAC; *see, i.e., Lopez*, 203 F.3d at 1127, 1130. If the FAC is not clear that it alleges negligent, rather than intentional, actions, Ms. Klemann seeks leave to amend to specify such per the Court's direction.

**Conclusion**

For the above rationale, Ms. Klemann respectfully requests that the Court deny Defendant's Rule 12(b)(6) Motion to Dismiss, in Part, First Amended

Complaint (Doc. 15), and allow the disputes in this matter to be resolved on the merits.

Dated this 31st day of January, 2024.

CARLS LAW, PLLC

/s/ Hillary P. Carls
Hillary P. Carls
*Attorney for Plaintiff*

## Certificate of Compliance

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count calculated by Microsoft Word, is 3,953, excluding the caption, certificate of compliance, table of contents and authorities, and exhibit index, if any.

Dated this 31st day of January, 2024.

/s/ Hillary P. Carls
Hillary P. Carls